UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MASTERCRAFT DECORATORS, INC.,

                        Plaintiff,

v.

                        Case # 18-CV-6037-FPG

                        DECISION AND ORDER

RANDY ORLANDO and
GRANDSTAND GLASSWARE AND APPAREL,

                        Defendants.

## INTRODUCTION

This case involves a dispute between a company, its former employee, and a competing company that hired the former employee. Plaintiff Mastercraft Decorators, Inc., brought this complaint against the former employee, Randy Orlando, and the competing company, Grandstand Glassware and Apparel, alleging eight claims for (1) tortious interference with contract; (2) tortious interference with prospective economic advantage; (3) breach of covenant not to compete; (4) breach of covenant not to solicit; (5) unfair competition; (6) misappropriation of trade secrets and confidential information; (7) defamation and brand tarnishment; and (8) breach of fiduciary duty. ECF No. 1.

Defendant Orlando filed a motion to dismiss for failure to state a claim. ECF No. 3. Defendant Grandstand filed a motion to dismiss for lack of jurisdiction and adopted the arguments in Orlando's motion. ECF No. 7. This order addresses both motions. For the reasons that follow, Mastercraft's complaint is DISMISSED without prejudice.

1

# BACKGROUND[1]

Mastercraft is a custom glassware distributor that is based in New York and does business throughout the United States. ECF No. 1 at ¶ 10. Mastercraft employed Orlando as a salesperson for over five years. *Id*. at ¶ 13. At some point during his employment, Orlando moved to Tennessee, but Mastercraft encouraged him to stay on. *Id*. at ¶ 40. Nevertheless, Orlando eventually resigned from Mastercraft and Grandstand hired him as a salesperson. *Id*. at ¶ 13. Grandstand is a Kansas company that is also in the glassware distribution business. *Id*. at ¶ 12. It is a direct competitor of Mastercraft. *Id*. at ¶ 13.

Mastercraft alleges that, when Orlando left Mastercraft, he misappropriated its confidential information and trade secrets, including customer lists, and used that information to solicit Mastercraft's customers to Grandstand. *Id*. at ¶¶ 14, 17, 32-38. It also alleges that Orlando breached the non-compete and non-solicitation covenants included in Mastercraft's Employee Handbook, *Id*. at ¶¶ 24-31, breached his fiduciary duty to Mastercraft, *Id*. at ¶¶ 44-46, tortiously interfered with Mastercraft's contracts and prospective business relations, *Id*. at ¶¶ 18-23, and defamed Mastercraft. *Id*. at ¶¶ 39-43.

Orlando now moves to dismiss the complaint for failure to state a claim, ECF No. 3, and Grandstand moves to dismiss for lack of jurisdiction and adopts the arguments in Orlando's motion, ECF No. 7.

# LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

---

[1] The following allegations are taken from Mastercraft's Complaint (ECF No. 1) and are accepted as true for the purpose of evaluating the motions to dismiss.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. 679.

## DISCUSSION

### Grandstand's Motion to Dismiss for Lack of Jurisdiction (ECF No. 7)

Grandstand argues that Mastercraft fails to establish personal jurisdiction over it, a Kansas corporation. ECF No. 7. The Court agrees.

> Personal jurisdiction is commonly separated into two categories. First, a court may exercise specific jurisdiction over a defendant on the basis of the defendant's in-state activities connected to the litigation. *International Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945). Second, a court may exercise general jurisdiction over a defendant when the defendant's contacts with the forum state are so extensive as to render the defendant "at home" in that forum state, regardless of whether any of the defendant's in-state activities are relevant to the litigation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

*Covanex, Inc. v. Duvvada*, 14-CV-6050-FPG, 2015 WL 8375211, at *3 (W.D.N.Y. Dec. 8, 2015). The paradigm forums for general jurisdiction over a corporation are its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137.

**Specific Jurisdiction**

"[S]pecific [jurisdiction,] or long-arm jurisdiction . . . , exists over a defendant only when the claims relate to the defendant's contacts with New York. Long-arm jurisdiction is provided for in Section 302 of the C.P.L.R." *Hume v. Lines*, No. 12-CV-6378-FPG-JWF, 2016 WL

1031320, at *10 (W.D.N.Y. Mar. 8, 2016) (internal citations omitted). Section 302 provides three bases of jurisdiction.

First, section 302(a)(1) allows New York courts to exercise specific jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Mastercraft's complaint does not allege that Grandstand does business in New York or contracts to supply goods and services in New York, therefore section 302(a)(1) is not satisfied.

Second, section 302(a)(2) "allows New York courts to exercise specific jurisdiction over a non-domiciliary defendant where the defendant 'commits a tortious act within the state.' A defendant must have been physically present in New York to have committed a tortious act 'within the state' for the purposes of § 302(a)(2)." *Covanex,* 2015 WL 8375211, at *3. Mastercraft argues that Defendants' "tortious acts and breaches of contract have their genesis in New York and have caused damage to Mastercraft in New York," ECF No. 11 at 12, but it does not allege that either Defendant performed a wrongful act while physically in New York. Section 302(a)(2) is not satisfied.

Third, section 302(a)(3)

> allows New York courts to exercise specific jurisdiction over a non-domiciliary defendant where the defendant "commits a tortious act without the state causing injury to person or property within the state."[2] The injury suffered by the plaintiff in New York "must be direct and not remote or consequential." *Lehigh Vol. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975). The mere "occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York" is therefore not enough. *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 338 (S.D.N.Y. 2008). "This principle has

---

[2] "Section 302(a)(3) also requires that the defendant either '(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.' Because [Mastercraft] has failed to allege injury within New York, the Court need not reach whether one of these two standards has been satisfied." *Covanex*, 2015 WL 8375211, at *4 n.5. In any case, Mastercraft does not make allegations sufficient to satisfy these two standards.

4

specific application to claims such as tortious interference, and generally precludes jurisdiction when the asserted injury is the loss of a customer outside of New York." *Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 439 (S.D.N.Y. 1998) . . . .

*Covanex*, 2015 WL 8375211, at *4.

Mastercraft's assertion that Defendants "caused damage to Mastercraft in New York," ECF No. 11 at 12, is insufficient because Mastercraft does not allege that it lost any New York customers. *See Covanex*, 2015 WL 8375211, at *4 (finding that plaintiff failed to adequately allege that it suffered injury in New York where it only alleged that it lost out-of-state customers); *Darby Trading*, 568 F. Supp. 2d at 336 ("While Plaintiff is correct to note that lost sales or customers can satisfy the "injury within New York" requirement under Section 302(a)(3)(ii), those lost sales must be in the New York market, and those lost customers must be New York customers."). Section 302(a)(3) is not satisfied.

Accordingly, this Court cannot exercise specific jurisdiction over Grandstand.

**General Jurisdiction**

Mastercraft's complaint alleges that Grandstand is a Kansas corporation with its principal place of business in Kansas. It does not allege that Grandstand has any contacts in New York, let alone contacts extensive enough to render Grandstand essentially "at home" in New York. *Covanex*, 2015 WL 8375211, at *3.

Accordingly, this Court cannot exercise general jurisdiction over Grandstand.

Because Mastercraft has not established personal jurisdiction over Grandstand, Grandstand's motion to dismiss (ECF No. 7) is GRANTED.

### Orlando's Motion to Dismiss for Failure to State a Claim (ECF No. 3)

Orlando moves to dismiss each of Mastercraft's eight causes of action for failure to state a claim. ECF No. 3. The Court agrees with Orlando that Mastercraft fails to state a claim and GRANTS the motion to dismiss as to all eight claims.

5

**Claim 1: Tortious Interference with Contract**

Under New York law, the elements of tortious interference with contract are "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."

*United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 486 (N.D.N.Y. 2018) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006)).

Mastercraft alleges that it had longstanding relationships with its customers, and that Defendants intentionally interfered with those relationships and "procured cessations and breaches" of Mastercraft's contractual relations with its customers. ECF No. 1 at ¶ 19.

These allegations are insufficient to state a claim because Mastercraft fails to identify any specific customer contracts with which Defendants interfered. *See Bose v. Interclick, Inc.,* No. 10-CV-9183, 2011 WL 4343517, at *10-11 (S.D.N.Y. Aug. 17, 2011) (dismissing tortious interference with contract claim where plaintiff claimed generally that it had contracts with various parties, but did not allege any "facts regarding the terms of the contracts or the specific parties to the contracts"); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,* 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) (denying leave to amend tortious interference with contract claim that had already been dismissed once because the amended complaint still failed to "specify a single customer contract with which defendants interfered"); *Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs.*, 515 F. Supp. 2d 298, 315 (N.D.N.Y. 2007) (holding that plaintiff failed to state a claim for tortious interference with contract partly because the complaint never "single[d] out a particular contract that was known to [defendant]").

Mastercraft's response in opposition to Defendants' motions to dismiss does not address this issue. ECF No. 11 at 7-9. Accordingly, Defendants' motions to dismiss as to the first claim

are GRANTED. *See Hayner Hoyt*, 306 F. Supp. 3d at 487 ("[plaintiff] does not allege the existence of any specific contracts or whether they were breached. Furthermore, [plaintiff] does not respond to this aspect of defendants' argument in his opposition . . . . As such, [plaintiff's] tortious interference with contract claim is dismissed.").

**Claim 2: Tortious Interference with Prospective Economic Advantage**

To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must allege " '(1) that [he] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.' " *Burton v. Label, LLC*, No. 15-CV-5793 (VSB), 2018 WL 4759735, at *15 (S.D.N.Y. Sept. 30, 2018) (quoting *Kirch*, 449 F.3d at 400).

"Construing these requirements in the context of New York pleadings, New York courts have dismissed complaints that failed to allege the specific business relationship that was interfered with." *Johnson & Johnson v. Am. Nat'l. Red Cross*, 528 F. Supp. 2d 462, 464 (S.D.N.Y. 2008); *see also Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08 CIV.03710(PGG), 2010 WL 1222012, at *8 (S.D.N.Y. Mar. 29, 2010) ("Prior to *Iqbal*, New York district courts disagreed as to whether a plaintiff was required to identify specific business relationships in order to make out a claim for tortious interference with prospective economic advantage. After *Iqbal*, it is clear that a claim . . . which merely 'offers "labels and conclusions" [and] "a formulaic recitation of the elements of a cause of action" '[]will not survive a motion to dismiss.") (quoting *Iqbal*, 556 U.S. at 678).

Here, Mastercraft merely alleges that it "had business relations with its customers" with which Defendants interfered. ECF No. 1 at ¶ 22. It does not identify any specific relationships or allege that Defendants knew of any specific relationships. *See Lesesne v. Brimecome*, 918 F. Supp.

7

2d 221, 227 (S.D.N.Y. 2013) ([T]he "weight of authority . . . requires a plaintiff to identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage."); *Am. Bldg.*, 515 F. Supp. 2d at 316 (dismissing claim where plaintiff merely alleged that defendant "participated in the dissipation and misappropriation" of the plaintiff's business; holding that a plaintiff "must allege 'interference with a specific identified business relationship with a third party' ") (quoting *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994 (CM)(GAY), 2007 WL 1152894, at *14 (S.D.N.Y. Apr. 16, 2007)).

Accordingly, Defendants' motions to dismiss as to the second claim are GRANTED.

**Claims 3 and 4: Breach of Covenant Not to Compete/Solicit**

"A breach of contract claim under New York law requires a plaintiff to allege: (1) the existence of a valid contract; (2) adequate performance by the plaintiff; (3) breach by the defendant; and (4) damages caused by that breach." *Williams v. Buffalo Bd. of Educ.*, 15-CV-255-FPG, 2017 WL 4310698, at *2 (W.D.N.Y. Sept. 28, 2017).

Here, Mastercraft's claims for breach of covenant not to compete/solicit are based on a single paragraph in Mastercraft's Employee Handbook[3] which prohibits employees from soliciting Mastercraft's customers during employment and for 24 months thereafter. ECF No. 1 at ¶ 24-31, ECF No. 3-2 at 1. Mastercraft does not allege that the Handbook constituted a valid contract[4], that

---

[3] Mastercraft did not attach the Handbook to its complaint, but Orlando submitted two pages of the Handbook along with his motion to dismiss. ECF No. 3-2. Mastercraft did, however, reference and quote the Handbook in its complaint, so this Court may consider it. *See Burton v. Label, LLC*, 15-CV-5793 (VSB), 2018 WL 4759735, at *5 (S.D.N.Y. Sept. 30, 2018) ("Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.") (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)); s*ee also Daiei Trading Co., Inc. v. Williams Rice Milling Co*., 30 F. App'x. 13, 14 n.2 (2d Cir. 2002) (summary order).

[4] Whether the Employee Handbook constitutes a valid contract is not clear. The Handbook generally does not use contractual, promissory language, and instead refers to Mastercraft's "values, goals and basic policies and procedures." ECF No. 3-2 at 2. *See Sherry v. Sisters of Charity Med. Ctr.*, 98-CV-6151 (JG), 1999 U.S. Dist. LEXIS 6623, at *15 (E.D.N.Y. May 4, 1999) (where grievance procedure in employee handbook used non-compulsory terms, a reasonable employee would most likely not view it as a contract); *L-3 Communs. Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1165 (D. Colo. 2015) (employee pamphlet and booklet "seem[ed] to disclaim any status

8

it adequately performed under the contract, or that the Defendants' breach caused Mastercraft damages (other than the conclusory allegation that Defendants caused "cessations and breaches" of Mastercraft's contractual relations in claim 1). ECF No. 1 at ¶ 22. Mastercraft does not sufficiently state a claim for breach of covenant not to compete/solicit.

Defendants also argue that Mastercraft's third and fourth claims are precluded by disclaimers in the Employee Handbook, which provide that "nothing in the handbook constitutes an expressed or implied contract of employment," ECF No. 3-2 at 2, and that "this handbook and the information described herein are not intended to constitute an employment contract." *Id.* at 1. *See Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312 (2001) (holding that the plaintiff failed to state a claim for breach of employment agreement because the handbook contained an express disclaimer of contractual rights and obligations and commenting that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements").

Here, however, Mastercraft does not allege the existence of an employment agreement. The disclaimer, then, does not conclusively preclude Mastercraft's claims for breach of covenant not to compete/solicit. *See Keystone Fruit Mktg., Inc. v. Brownfield*, CV-05-5087-RHW, 2006 WL 1873800, at *9 (E.D. Wash. July 6, 2006), *aff'd*, 352 F. App'x 169 (9th Cir. 2009) (summary order) ("The disclaimer, 'this handbook is neither an express or implied contract of employment,' is limited to contracts of employment and would not preclude contractual duties involving disclosure of confidential information."); *Brown v. St. Paul Travelers Companies*, 559 F. Supp. 2d

---

as formal, binding agreements" because they "described themselves as 'guidelines' and 'general guidance' and 'summar[ies]' "). The Handbook also indicates that "[i]t is not intended to be inclusive of all Company defined policy and procedures" and that Mastercraft "reserves the right to change the policies in the handbook at any time." ECF No. 3-2. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87 (N.Y.1999) (characterizing provision allowing employer to unilaterally modify handbook at any time as "hardly the harbinger of a legally binding . . . arrangement" and finding that the handbook was not a contract). Without the entire Handbook and full briefing on the issue, the Court declines to decide whether the Handbook constitutes a contract at this stage.

288, 292 (W.D.N.Y. 2008), *aff'd*, 331 F. App'x 68 (2d Cir. 2009) (summary order) (disclaimer which said that the handbook did "not constitute an express or implied contract of employment" did not render an arbitration clause in the handbook unenforceable).

Nevertheless, because Mastercraft fails to sufficiently state a claim for breach of covenant not to compete/solicit, Defendants' motions to dismiss as to the third and fourth claims are GRANTED.

**Claims 5, 6, and 8: Unfair Competition, Misappropriation of Trade Secrets, and Breach of Fiduciary Duty[5]**

> To plead misappropriation of a trade secret under New York law, a party must plead "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quotation omitted). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (quotation omitted). Similarly, "[t]o state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage." *Reed Const. Data*, 745 F. Supp. 2d at 352 (citations omitted). Finally, to state an unfair competition claim, a party must allege "that the [d]efendant [ ] misappropriated the [p]laintiff['s] labors, skills, expenditures, or good will and displayed some element of bad faith in doing so." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 617 (S.D.N.Y. 2010) (quotation omitted). Courts often analyze misappropriation of trade secret and confidential information and unfair competition claims together.

*Bancorp Services, LLC v. Am. Gen. Life Ins. Co.*, 14-CV-9687 (VEC), 2016 WL 4916969, at *10 (S.D.N.Y. Feb. 11, 2016).

---

[5] "[Mastercraft's] unfair competition claims are based entirely on the claims for misappropriation of trade secrets, and, essentially, restate those very same claims. Where these two types of claims are duplicative of each other, courts generally consider them to be a single cause of action." *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 300 (E.D.N.Y. 2012). Additionally, Mastercraft's breach of fiduciary duty claim is based on the misappropriation of Mastercraft's trade secrets, so the Court considers that claim along with the other two. *See generally Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 471 (S.D.N.Y. 2013) (dismissing breach of fiduciary duty claim to the extent it was duplicative of a misappropriation claim).

*Possession of a Trade Secret*

"At the pleadings stage, the plaintiff must 'generally identify the trade secrets at issue,' but need not plead the trade secret with specificity in the complaint." *Bancorp*, 2016 WL 4916969 at *11 (quoting *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, No. 14-CV-2796(PKC), 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014)); *see also Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y.2008) (specificity as to the precise trade secrets is not required to defeat a motion to dismiss); *Jinno Int'l Co. v. Premier Fabrics, Inc.,* 12-cv-07820, 2013 WL 4780049, at *4 (S.D.N.Y. May 24, 2013) ("Detailed allegations concerning the nature of the alleged trade secrets are not necessary at the pleading stage.").

"Conclusory assertions that something constitutes a trade secret, however, are insufficient." *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 258 (E.D.N.Y. 2015) (quoting *Alexander Interactive*, 2014 WL 4651942, at *5). Although a plaintiff "need not disclose its secrets in order to state a claim, it must allege facts sufficient to show that the information in fact is secret—for example by disclosing the measures it took to protect the secrecy of the information . . . ." *Jinno*, 2013 WL 4780049, at *5.

> To determine whether information qualifies as a trade secret, New York courts generally consider six factors: "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999). These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim . . . . "[T]he most important consideration is whether the information is

actually a secret." *See Jinno Int'l Co. v. Premier Fabrics, Inc.,* 12-cv-07820, 2013 WL 4780049, at *4 (S.D.N.Y. May 24, 2013).[6]

*LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015) (quoting *N. Atl. Instruments,* 188 F.3d at 44); *see also Medtech*, 596 F. Supp. 2d at 787, 804. "Courts tend to apply a similar standard with respect to confidential information." *Bancorp*, 2016 WL 4916969, at *11.

Here, Mastercraft alleges that the following categories of information constitute trade secrets or confidential information:

- Customer lists, including contact information, detailed information about each customer, and pricing information, ECF No. 1 at ¶¶ 4, 33;
- Pricing information and marketing sources, plans, and strategies, *id.* at ¶¶ 3, 4, 36;
- Order cycles and order histories, *id.* at ¶ 3; and
- Trade association and other websites' usernames and passwords. *Id*. at ¶ 3.

Defendants argue that Mastercraft's allegations are vague, conclusory, and insufficient to support an inference that the information qualifies as trade secrets. ECF No. 3-3 at 9-10. Mastercraft responds that specificity as to the precise trade secrets is not required at this stage, and it is not obligated to reveal its trade secrets. ECF No. 11 at 13 (citing *Medtech*, 596 F. Supp. 2d at 789).

The Court agrees with Defendants. Although Mastercraft "need not disclose its secrets in order to state a claim, it must allege facts sufficient to show that the information in fact is secret. . . ." *Jinno*, 2013 WL 4780049, at *5.

---

[6] Some courts have held that consideration of these six factors is premature at the motion to dismiss stage, since the issue of whether an item qualifies as a trade secret is ultimately a question of fact. *See Am. Bldg.*, 515 F. Supp. 2d at 308 ("[T]he existence of a trade secret is usually treated as a question of fact, and, therefore, an analysis of these factors requires an examination of a developed record."); *Medtech*, 596 F. Supp. 2d at 789 ("To consider these factors now [on a motion to dismiss] would be premature . . . .") (quoting *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 585-86 (E.D.N.Y.2007)). Other courts, however, consider the factors to evaluate the sufficiency of trade secret allegations on a motion to dismiss. *See Bancorp*, 2016 WL 4916969, at *10; *LivePerson*, 83 F. Supp. 3d at 514.

In *Continental Industries Group, Inc. v. Altunkilic*, 14CIV790ATJLC, 2018 WL 1508566 (S.D.N.Y. Mar. 27, 2018), the court explained that a plaintiff can demonstrate secrecy by showing substantial exclusivity and the use of precautionary measures to protect the trade secrets. *Id.* at *6. Precautionary measures include, for example, the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality. *Id.* Because the plaintiff in *Continental* offered nothing to show how the information was safeguarded and made only conclusory allegations that the trade secret information was "internal and proprietary" and "kept confidential," its allegations were insufficient to establish liability, even after a default. *Id.; see also Midwest Railcar Corp. v. Everest Railcar Services, Inc.*, 16 CIV. 604 (AKH), 2017 WL 1383765, at *7 (S.D.N.Y. Apr. 13, 2017) (dismissing unfair competition claim where plaintiff failed to allege any non-conclusory facts indicating that its pricing schedule was confidential).

Here, besides vaguely alleging that Mastercraft compiled the purported trade secrets through its efforts, ECF No. 1 at ¶¶ 33, 36, that the information is not "generally available in public sources," *id.* at ¶¶ 33, 34, and that its Employee Handbook advises employees that certain information, including "information concerning customers" is confidential, *id.* at ¶ 15, Mastercraft does not offer any other allegations to suggest that the "information falls into the category of 'trade secrets.' " *Hyo Jung v. Chorus Music Studio, Inc.*, 13-CV-1494 CM RLE, 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014); *see also Cont'l Indus.*, 2018 WL 1508566 at *6 (finding plaintiff's allegations that the purported trade secrets were not "generally known to the public" to be "threadbare" and insufficient to establish liability); *Thayil v. Fox Corp.*, 11 CIV. 4791 SAS, 2012 WL 364034, at *5 (S.D.N.Y. Feb. 2, 2012) (plaintiff's misappropriation of trade secrets claim

failed where he made conclusory allegations that he considered a marketing plan to be a trade secret and failed "to plead factual content that would allow the Court to draw an inference that the Marketing Plan was in fact treated as a trade secret").

Mastercraft also makes barely any allegations as to the six factors. As to the first factor, the extent to which the information is known outside of the business, Mastercraft simply alleges that its information is not "generally available" in public sources. This is insufficient. *See Cont'l Indus.*, 2018 WL 1508566 at *6. As to the second factor, the extent to which the information is known by employees and others involved in the business, Mastercraft makes no allegations. As to the third factor, the extent of measures taken by the business to guard the secrecy of the information, Mastercraft only alleges that the company handbook advised employees that certain information, including "customer information," was confidential. As to the fourth factor, the value of the information to the business and its competitors, Mastercraft only makes the conclusory allegation that its "confidential and proprietary customer lists gave [it] a commercial advantage in marketing its products and servicing its customers." ECF No. 1 at ¶¶ 33, 36. As to the fifth factor, the amount of effort or money expended by the business in developing the information, Mastercraft makes no allegations. Finally, as to the sixth factor, the ease or difficulty with which the information could be properly acquired or duplicated by others, Mastercraft makes no allegations.

Even though consideration of these six factors is not required at the motion to dismiss stage, complaints that have survived motions to dismiss have included more detail than Mastercraft's complaint, including details related to the six factors.

For example, in *General Security, Inc. v. Commercial Fire & Security, Inc.*, 17CV1194DRHAYS, 2018 WL 3118274, at *5 (E.D.N.Y. June 25, 2018), the court found that the complaint sufficiently stated a claim for misappropriation of trade secrets, including customer lists,

because the plaintiff described the trade secrets with sufficient specificity and "described the specific steps it took to keep the customer information secret."

In *Medtech*, although the court acknowledged that the plaintiff had not specifically identified the precise trade secrets at issue, it found that the plaintiff stated a misappropriation claim because it alleged that it had expended considerable time, effort, and money developing its trade secrets, that it only shared them with defendants pursuant to confidentiality agreements, and that defendants' misappropriation allowed a competitor with no experience in the field to rush a competing product to market without engaging in a development process. 596 F. Supp. 2d at 788.

In *Oneida Group Inc. v. Steelite International U.S.A. Inc.*, 17CV0957ADSAKT, 2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017), the complaint alleged trade secrets similar to those in this case, such as customer lists and market and pricing strategies. *Id.* at *7. The court found that the plaintiff stated a claim—but just barely—because the plaintiff alleged that it took various steps to keep the information secret, like by requiring employees and consultants to sign nondisclosure agreements, maintaining a handbook prohibiting the unauthorized disclosure of confidential business information, and enforcing a records retention policy that required securing and properly disposing of all documents containing trade secrets. *Id.* at *3.

Here, Mastercraft does not allege any steps it took to keep its information confidential other than by referencing the single-paragraph confidentiality provision in the handbook. ECF No. 1 at ¶ 15, ECF No. 3-2 at 2. It also does not allege any facts regarding the efforts it undertook to develop the trade secrets and confidential information. It does little more than list the categories of purported trade secrets and declare that they are confidential.

> While it is not necessary to disclose every detail of an alleged trade secret in a complaint, [a plaintiff] must do more than simply list general categories of information. If that were not the case, then any claimant could survive a motion to

dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret. *Twombly* and *Iqbal* require more.

*Elsevier Inc. v. Doctor Evidence, LLC*, 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018); *but see Dardashtian v. Gitman*, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) (where plaintiff merely listed categories of purported trade secrets such as customer lists and addresses, software programs, and computer pass codes and other protectable intellectual property and proprietary information, the "level of detail [was] adequate for defendants to discern the trade secrets at issue"); *Kosower v. Gutowitz*, 00 CIV. 9011 (JGK), 2001 WL 1488440, at *8 (S.D.N.Y. Nov. 21, 2001) (complaint stated a misappropriation of trade secrets claim just by alleging that software and database were trade secrets).

*Use of the Trade Secrets*

In addition to alleging the existence of a trade secret, a plaintiff must also allege that a defendant "used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Bancorp*, 2016 WL 4916969, at *10.

Defendants argue that Mastercraft fails to allege how the trade secrets were misused because it does not identify any specific customers that Defendants contacted using the trade secrets. ECF No. 3-3 at 10, 12. Mastercraft's response in opposition does not address this argument. ECF No. 11 at 7-9.

Mastercraft's complaint alleges that Defendants misappropriated its customer lists and other confidential information to solicit Mastercraft's customers, interfere with its business relationships and client contracts, and exploit the information to Defendants' benefit and Mastercraft's detriment. ECF No. 1 at ¶¶ 3, 4, 15-17, 33-34. Similar allegations have been deemed conclusory.

16

For example, in *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 674 (S.D.N.Y. 2016), the court found allegations that plaintiff "conspired to steal the Stolen Trade Secrets" and that one defendant "effected the scheme through [another defendant]" to be the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," that "are not entitled to credit and are devoid of plausible factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In *Hyo Jung*, 2014 WL 4493795, at *8, the court found the allegations in defendants' counterclaim that the plaintiff:

- "used the . . . proprietary information that they conspired to steal from Defendants to promote their new financial venture;"
- "sold the subject customer list to third parties and unjustly enriched themselves;"
- "knowingly misappropriated and used or misused its exclusive proprietary information including trade secrets, financial information, customer lists, customer financial information and other employees' personal and financial information for Plaintiffs' legal and pecuniary benefit;" and
- "contacted or solicited customers on the stolen customer list to promote their business"

to be conclusory. The court commented that defendants failed to "assert any details regarding in what ways Plaintiffs allegedly misused the customer list, . . . [or] identify any customers who were supposedly contacted or solicited . . . ." *Id.* at *23. *Cf. Gen. Sec.*, 2018 WL 3118274, at * 5 (finding that plaintiff stated a claim for misappropriation of trade secrets where it "identified individual customers that were contacted and solicited by defendants."); *Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*, 1:12-CV-1292, 2012 WL 5598501, at *4 (N.D.N.Y. Nov. 15, 2012) (finding misappropriation claim sufficient where plaintiff alleged that customer lists, business plans, financial data, and pricing methods were trade secrets, and specified that defendants misappropriated customers in certain locations during certain months and years).

Mastercraft's scant allegations as to the nature and secrecy of its purported trade secrets, coupled with its conclusory allegations as to how the Defendants misused the trade secrets, are

insufficient to state a claim for unfair competition, misappropriation of trade secrets and confidential information, and breach of fiduciary duty based on misappropriation. Accordingly, Defendants' motions to dismiss as to the fifth, sixth, and eighth claims are GRANTED.

**Claim 7: Defamation/Brand Tarnishment**

> To state a defamation claim, Plaintiff must demonstrate that (1) defendant made a false statement; (2) the statement was "of or concerning" the plaintiff; (3) the statement was published without privilege or authorization to a third party; and (4) the statement caused the plaintiff harm or constituted defamation per se. Additionally, a plaintiff must plead the particular words giving rise to her claim. Further, a defamation plaintiff in New York must set forth in the complaint the time, place, manner of the allegedly defamatory statement as well as the persons to whom the statement was made.

*Williams*, 2017 WL 4310698 at *4. "Loose, figurative or hyperbolic statements" and "unverifiable expressions of opinion" are not actionable. *MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, 17CV07568PGGKHP, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018), *report and recommendation adopted,* 17 CIV. 7568 (PGG), 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018). Additionally, "where the plaintiff is a corporation, a cause of action for libel per se requires the plaintiff to establish that the publication injured its business reputation or its credit standing" and to make "some allegation tending to establish that its business reputation was harmed." *Sandals Resorts Intern. Ltd. v. Google, Inc.*, 86 A.D.3d 32, 39, 925 N.Y.S.2d 407 (1st Dep't 2011).

Mastercraft fails to meet this "demanding standard." *Williams*, 2017 WL 4310698 at *4. Its complaint merely alleges that Orlando made "negative, defamatory, and untrue statements about Plaintiff's business, integrity, character, and operations, through public statements and by posting such statements on social media, including referring to Plaintiff as a 'dysfunctional company.'" ECF No. 1 at ¶ 41. Besides the "dysfunctional company" example, Mastercraft does not allege any particular words that were published, and does not allege the time, place, or manner of any statements, or the persons to whom the statements were made. *See Williams*, 2017 WL

4310698 at *4; *cf. Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 48 (1st Dep't 2009) ("The Fund pleads the underlying defamation with the required specificity, setting forth the particular words that were said, who said them and who heard them, when the speaker said them, and where the words were spoken."). Mastercraft also fails to make any non-conclusory allegations that its business was harmed. ECF No. 1 at ¶ 42.

Accordingly, Defendants' motions to dismiss as to the seventh claim are GRANTED.

**Leave to Amend**

Mastercraft's memorandum in opposition to Defendants' motions to dismiss contains a request to amend the complaint if the motions to dismiss are granted in any respect. ECF No. 11 at 19. This request is procedurally defective under Local Rule of Civil Procedure 15. Local Rule 15(a) provides that "[a] movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion," and Local Rule 15(b) requires parties represented by counsel to identify the proposed amendments "through the use of a word processing 'redline' function or other similar markings . . . ." *See Popat v. Levy*, 253 F. Supp. 3d 527, 546 (W.D.N.Y. 2017) (denying leave to amend where plaintiff failed to comply with the Local Rules by including a cursory request for leave to amend in his opposition papers); *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (summary order) (finding district court did not abuse its discretion in denying leave to amend when request was made "on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted").

Here, "because Plaintiff has failed to comply with the Local Rules, the Court exercises its discretion in denying this 'cursory or boilerplate request[ ] . . . made solely in a memorandum in

opposition to a motion to dismiss.' " *Popat*, 253 F. Supp. at 546 (quoting *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009) (summary order)).

## CONCLUSION

For the reasons stated, Defendants' motions to dismiss (ECF Nos. 3 and 7) are GRANTED, and Mastercraft's complaint is DISMISSED WITHOUT PREJUDICE in its entirety as to both Randy Orlando and Grandstand Glassware and Apparel. If Mastercraft wishes to seek leave to amend its complaint, it shall do so through a procedurally-compliant motion filed within 30 days from the date of this order. Otherwise, this case will be closed without further order.

IT IS SO ORDERED.

Dated: December 10, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court